313 So.2d 886 (1975)
STATE of Louisiana, Through DEPARTMENT OF HIGHWAYS, Plaintiff-Appellant,
v.
UNITED PENTECOSTAL CHURCH OF HODGE, Louisiana, Defendant-Appellee.
No. 12550.
Court of Appeal of Louisiana, Second Circuit.
June 3, 1975.
Rehearing Denied July 1, 1975.
Writ Refused September 19, 1975.
*889 D. Ross Banister, William W. Irwin, Jr., Jerry F. Davis, Robert L. Ledoux, Johnie E. Branch, Jr., Baton Rouge, by Jack C. Fruge, Sr., Ville Platte, for plaintiff-appellant.
Holloway, Baker, Culpepper & Brunson, by William H. Baker and Herman A. Castete, Jonesboro, for defendant-appellee.
Before BOLIN, HALL and MORRIS, JJ.
BOLIN, Judge.
In order to widen Louisiana Highway No. 167 from an existing two-lane road to a four-lane thoroughfare, the State of Louisiana, through Department of Highways, acting under the authority granted it by Louisiana Revised Statutes 48:441 et seq., expropriated a strip of land approximately eleven feet deep across the front of defendant's property which is located on the west side of the highway and on which is situated a church building. For purposes of increasing visibility plaintiff also expropriated a small triangular-shaped lot located in the northeast corner of defendant's property which is bounded on the north by First Street. As compensation for the land taken the Department of Highways deposited the sum of $3,632 in the registry of the court. Being dissatisfied with the amount deposited, defendant sought a judicial determination of the amount of compensation due it.
Following trial on the merits the judge, for written reasons assigned, found the property expropriated by the highway department consisted of 2,582 square feet with a value of $1.75 per square foot, or a total of $4,518. The court also found miscellaneous items of improvements owned by defendant were either destroyed or damaged to the extent of $2,350. These items consisted of six gas lights, five bumper posts and connecting chains, 174 square feet of concrete walks, a brick retaining wall and concrete in the parking area. The court further found severance damage to *890 the remainder of defendant's property, including the church building, in the sum of $77,151.50. There was judgment in favor of defendant and against the Department of Highways for the total sum of $84,020, subject to a credit of $3,632 previously deposited in the court, plus legal interest from October 24, 1973, and costs. In addition the fees of the expert witnesses used by defendant were fixed at $13,335.10 and taxed as cost against the Department of Highways, which has appealed.
In this court defendant has filed a motion to dismiss the appeal. We overrule the motion to dismiss. We further amend the judgment by reducing the amount of the award to the landowner and reducing the amount fixed for the fees of the experts.

MOTION TO DISMISS
The motion to dismiss was based on the following grounds: (1) the petition for appeal was not signed by an attorney of record for appellant as provided by Louisiana Code of Civil Procedure Article 863; (2) appellant failed to deposit the additional amount awarded by the trial court; and (3) the transcript of testimony was not timely prepared and lodged before this court.
Answering the grounds set forth above in the order stated, we find:
(1) The petition for the appeal was properly signed. The petition listed the attorneys of record for appellant and was signed on behalf of these record attorneys. The primary purpose of Louisiana Code of Civil Procedure Articles 863 and 864 is to fix responsibility against an attorney in the event disciplinary action is necessary because of the filing of improper pleadings. Berglund v. F. W. Woolworth Co., 236 So.2d 266 (La.App.4th Cir. 1970). It is appropriate to also point out that appeals are favored in our law and may be taken by oral motion as well as written pleadings.
(2) In answer to the second ground, it is conceded plaintiff did not deposit the difference between the amount awarded and the amount previously deposited; however, in State, Department of Highways v. Holmes, 251 La. 607, 205 So.2d 416 (1967), the court expressly held that the excess award was not required to be paid pending an appeal.
(3) We find no merit in the third ground since the failure to file the transcript was not imputable to plaintiff but, to the contrary, plaintiff made every effort to have the transcript filed in this court, which has been done.

MERITS
Appellant sets forth several specifications of error which may be summarized as follows: (1) the lower court incorrectly calculated the total area of the property belonging to defendant before the taking and also incorrectly calculated the amount of land expropriated by plaintiff; (2) the lower court erroneously fixed the value of the land taken at $1.75 per square foot; (3) the amount awarded for severance damage was excessive; and (4) the amount of the fees fixed for the experts was excessive. In order to properly discuss and dispose of the errors alleged to have been committed by the trial judge it will be necessary to set forth the facts and general background of the case.
Before the taking defendant owned a lot located at the southwest corner of Highway No. 167 and First Street between the corporate limits of Jonesboro and Hodge, Louisiana. In this vicinity the highway was a hard-surface road running generally north and south. First Street was also hardsurfaced, running east and west, forming a T-intersection with the highway, with First Street forming the north boundary of defendant's property. While the exact size of the lot was disputed, it was approximately 178 feet wide and 178 feet deep on the north side and 193 feet deep on the south side. Located on the property was a brick church sanctuary, attached educational building, and incidental improvements *891 such as outside gas lights, paved areas, etc. Also located in front of the sanctuary, but apparently on property belonging to plaintiff, was a brick retaining wall extending across practically the entire frontage. The expropriation of the eleven-foot strip across the front of defendant's property will not encroach upon the building but it will damage or necessitate the removal of some of the gas lights, the sidewalks, etc., which were located either on plaintiff's existing right-of-way or on the portion expropriated by these proceedings.
Directing our attention first to the question of the correct dimensions of the subject property, particularly as it relates to the land expropriated, we find the lower court correctly resolved this dispute. The highway department contends that the area expropriated was 2346 square feet which was the square footage reflected on the plat of survey prepared by plaintiff's engineer and attached to plaintiff's petition. The surveyor did not testify nor did the department offer any other evidence to substantiate the size of the area depicted on its plat.
Defendant contends the area was 2582.07 square feet and in support thereof offered the testimony of Richard Crawford, a registered and licensed surveyor and civil engineer. In connection with Crawford's testimony defendant filed a plat of survey. The lower court accepted the figure of 2582 square feet as being the correct amount of property expropriated and we find no error in this portion of the findings of the district judge. We also find the plat of survey made by Crawford reflects the correct dimensions of defendant's property both before and after the taking.
We find merit in plaintiff's contention that the lower court erroneously calculated the value of the land taken on the basis of $1.75 per square foot. L. J. Roy and Dan Carlock, expert appraisers testifying for plaintiff, each estimated the value of the land to be $1.00 per square foot. Expert appraisers testifying for defendant were Hab Monsur, Jr., and Darrell Willet. Willet testified the land has a value of $1.27 per square foot and Monsur testified the value was $1.40 per square foot. It was stipulated that if O. L. Jordan were called to testify for defendant he would testify essentially the same as Willett and that if H. L. Bass were called he would testify essentially the same as Willet and fore apparent there was no testimony to support the lower court's award of $1.75 per square foot for the land taken. We conclude a fair basis for calculating the award would be $1.27 per square foot, or the sum of $3,279.14 for the land expropriated by plaintiff.
The lower court awarded $2350 for the taking or damaging of miscellaneous improvements located in the portion expropriated. This has not been questioned on appeal and we find no error in this award.
Considering next the question of severance damages, the trial judge in awarding defendant $77,150.50 for this item stated:
"After visiting the site of the taking, and listening to the experts who testified in this case, this Court is of the opinion that the remainder of the property has been damaged by the taking. These damages consist of the proximity of the traffic and noise generated by the highway when it is completed, the location of the right of way of the highway to the improvements of the subject property after the taking, the fumes and the noise as a result of the traffic travelling the highway after it is completed, and the restriction on the use of the front entrance to the church after the taking. However, the Court is inclined to agree with the appraisers for the defendant that the principal cause of the diminution in value of the remainder of the property in question is because of the proximity of the taking. This, together with the proximity of the vehicles using the highway *892 to be constructed and the noise that will be generated by it comprise primarily the factors making up the severance damages."
While we agree the value of defendant's property has diminished because of the taking, we find the amount awarded by the lower court is grossly excessive. The measure of compensation due a landowner under the highway "quick taking" statute at the time this suit was filed in 1973, is set forth in Louisiana Revised Statutes 48:453:
"The market value is determined as in general expropriation suits but as of the time the estimated compensation was deposited in the registry of the court.
"Damage to the remainder of the property is determined as of the date of the trial.
"In either case the defendant has the burden of proving his claim." (Emphasis added) [This was amended in 1974 to become effective for all suits filed after January 1, 1975]
The highway department contends there was no difference between the market value of the remainder of the property before and after the taking. L. J. Roy and Dan Carlock testified there was no severance damage.
Defendant argues its property was extensively damaged by the taking. All of defendant's expert witnesses were of the opinion the church property would be damaged principally because of the increased noise that would be caused by the church building being closer to the traveled portion of the new highway. Joe Simmons, testifying for defendant as a sound expert, thought the noise level would be appreciably increased.
We conclude all estimates of severance damage by defendant's witnesses were partially based on the false premise that the highway department would hard surface the entire right-of-way which would be utilized for automobile traffic. The plat of survey attached to plaintiff's petition reflects that only a part of the expropriated property will be utilized for widening the hard-surfaced or travel portion of the highway. According to defendant's surveyor, the church building is presently located 61.9 feet from the pavement at the closest point and will be 47.4 feet from the paved portion if the construction is performed in accordance with the highway department's plans and specifications. This witness gave the measurement from the outer edge of the expropriated property to the nearest portion on the church as 23.35 feet.
Defendant strenuously argues that because the highway department could, at some time in the future, change its construction plans and extend the paved portion of the road nearer to the church, this should be considered as a present damage to its property. We consider this argument to be unsound and based on speculation and conjecture. State, Department of Highways v. Genest, 218 So.2d 114 (La.App.3d Cir. 1968) appropriately states the law on this question as follows:
"The severance damages contemplated by the statute are generally those to result after construction of the highways for which the land is taken. State Through Dept. of Highways v. Black, La.App.3d Cir., 207 So.2d 583; cf., LSA-R.S. 48:451. The jurisprudence interpreting the cited statute permits the landowner to elect whether to sue immediately for the contemplated severance damages rather than to wait until after the construction is completed, but the landowner nevertheless bears the burden of proving what his severance damages will be upon the completion of the project. State Through Dept. of Highways v. Black, cited above."
All evidence was to the effect that the planned construction, for which the property was expropriated, would widen the traveled portion of the highway only about 14 feet. Therefore, under La.R.S. 48:453, and cases decided thereunder, severance *893 damage should be limited to that caused by the increase in the noise level resulting from widening of the highway for this distance.
While we have been unable to find any Louisiana case where severance damage has been awarded to the owner of church property because of increased noise, we conclude this is a compensable item. Property owned and utilized by a church for worship services falls within the category of special use property and the usual method of calculating the market value based on what the property would sell for on the open market is obviously inapplicable. We think the same logic would apply in arriving at severance damage to church property.
The pastor of defendant church testified services were frequently held in the sanctuary and any increase in the noise level would adversely affect these services and would diminish the value of the premises being used for these services. In State, Department of Highways v. Banquer, 308 So.2d 520 (La.App.1975), severance damages in the sum of $9,400 were awarded a landowner where the distance from the street to his estate-type home was reduced from 55 to 29 feet. However, this award was based on the difference in the market value of the property before and after the taking. See also State, Department of Highways v. Garrick, 260 La. 340, 256 So.2d 111 (1972), wherein severance damages were awarded under similar circumstances.
In arriving at the proper award for severance damages, this court takes into consideration the fact that defendant's church was located on an undesirable lot adjacent to a much-traveled highway before these expropriation proceedings were instituted. The widening of the highway into a four-lane thoroughfare will merely render the church property more undesirable than it was prior to the expropriation.
After a careful consideration of all the evidence we conclude an award of $20,000 for severance damage would adequately compensate defendant in this case. This award is based on our belief the increased noise level will be slight.

EXPERT WITNESS FEES
Next for consideration is plaintiff's allegation that the award of fees for defendant's expert witnesses is excessive. Keeping in mind the discretionary right of the trial judge to fix these fees, we have examined this portion of the record in order to determine if there has been an abuse of this discretion.
The following fees were charged by the expert witnesses for defendant and were considered reasonable by the trial judge who awarded same as costs against plaintiff Department of Highways:

 Hab Monsur $ 2,475.00
 Darrel Willet 2,475.00
 H. L. Bass 1,950.00
 O. L. Jordan 1,725.00
 Richard Crawford 577.00
 Lavelle Nunn 744.80
 Don Barron 805.10
 Thomas R. Terral 858.20
 A. Ray Bond 300.00
 Wesley Prestridge 350.00
 Joe Simmons 850.00
 Lauren Willett 225.00
 __________
 $13,335.10

Preliminary to a consideration and discussion of each of the fees fixed and listed above, we deem it appropriate to set forth several pertinent principles of law. The amount agreed upon between an expert witness and the party calling him is not a criterion as to the amount to be taxed as costs. See Daigle v. Hardware Dealers Mutual Fire Insurance Co., 165 So.2d 643 (La.App.1st Cir. 1964); State of Louisiana, through Department of Highways v. Smith, 270 So.2d 178 (La.App.1st Cir. 1972).
*894 The defendant can have taxed as court costs the reasonable cost of time spent by the expert in gathering facts necessary for his testimony but not for time spent in consultation which only assists the attorney in preparation for the litigation. Cox v. East Baton Rouge Parish School Board, 165 So.2d 667 (La.App.1st Cir. 1964), citing a long line of jurisprudence. In State v. LaBauve, 75 So.2d 862 (La.App.1st Cir. 1954) it was held a court will only award expert witness fees when the witness is in court testifying or in court waiting to be called to testify, and expert witness fees will not be awarded to an expert after he has testified, even though he stays in court only for the purpose of consulting the party who summoned him.
Hab Monsur, Jr., qualified as an expert appraiser for defendant, testified in detail relative to the square foot value assigned to each part of the church. He went on the property twice and actually measured the square feet of the building. His testimony consumed 15½ pages of the transcript. His charge for his service to defendant was $2250 for appraisal and $225 for one day in court, or a total of $2475. Although this witness obviously spent considerable time in research to arrive at his evaluation, we find no testimony nor evidence of the actual time consumed in preparing his appraisal. We find that $650, representing $500 for time spent in preparation and $150 for one day in court, would be a reasonable fee for this witness and this award is reduced from $2475 to $650.
Darrel V. Willet, an expert appraiser, testified to the size of the lot on which the church was located. He stated he had a floor plan in his appraisal report and this plan showed the various rooms used for related church activities and the educational building behind the sanctuary. His testimony required 25 pages of the record and reflected thorough acquaintance with the church, including market values of "special use" properties. However, as with the other appraisers, he failed to indicate how much time he spent preparing for trial. Willet's charge for the appraisal was $2250 and his fee for testifying $225, making a total of $2475. The lower court adopted his bill for services and awarded the total charge. We find a reasonable fee for this expert is $650, representing $500 for time spent in preparation and $150 for his testimony, and the award is hereby reduced from $2475 to $650.
It was stipulated that if H. L. Bass were called his testimony would be the same as that of Hab Monsur. Over objection of counsel for plaintiff the invoice of Mr. Bass was filed in evidence, reflecting a charge of $1800 for professional services rendered for appraisal and $150 for one day's appearance in court. The court awarded $1950 for this service, which we think excessive, and this award is reduced to $250.
It was stipulated that if O. L. Jordan, real estate appraiser, were called he would testify essentially the same as that of Mr. Monsur. The bill of Mr. Jordan for appraisal services was offered and filed in evidence over the objection of plaintiff's counsel. It shows a charge of $1500 for appraisal service and $225 for one day in court, totaling $1725. The court awarded the full amount of these charges, which we find excessive and reduce to $250.
Richard Crawford qualified as a civil engineer and registered surveyor, testified he surveyed the property. He used the highway department's maps or plats to determine where the right-of-way was in the document of 1934. His survey reflected 2582.07 square feet as the area taken in the latest expropriation, i.e., the area between the existing right-of-way and the stakes showing where the new right-of-way will be. He testified he charged $427 for the survey and $150 a *895 day for court appearance. The trial court awarded him $577, being the charge for his survey and a full day in court. The trial judge asked Crawford if his survey showed any significant difference between the amount he calculated and that shown by the highway plat. He replied in the negative except the minor amount of property on the corner which he supposed was taken to prevent any structure being built to obstruct visibility. This witness stated the hourly charge is shown on his bill as $22 an hour for field crew, $15 for services of engineer and $12 an hour for drafting. His testimony was comprised of nine pages. We affirm this award of $577.
Lavelle Nunn, called as defendant's witness, testified his occupation was that of photographer and that he took 45 pictures of the church and some comparables; that his bill for photographs was $644 and for testifying $100. The lower court awarded him $744.80. Plaintiff objected to the quantity of photographs and the charges therefor, as well as the fee for testifying. We agree with plaintiff's counsel that the number of photographs introduced into evidence was excessive. Since Nunn did not qualify as an expert and expressed no expert opinion he is not entitled to witness fees under Louisiana Revised Statutes 13:3666. We know of no law nor have we been cited to any providing for assessing as costs the amount charged for photographs.
Don Barron, a commercial building contractor called as a witness for defendant and qualified as an expert, testified he had built schools, telephone buildings, and two or three churches. He estimated the cost of reproduction would be $274,420. This witness' itemized statement of charges, which was addressed to defendant's attorney and offered in evidence, reflects $655.10 for time spent estimating cost of reconstruction and $250 as witness fee for one day in court. However, he was unable to say how much time he actually spent in making this estimate as other members of his crew worked on it. The court awarded $805.10. Barron's testimony required ten pages of the record. We find this fee should be reduced to $300, which includes $100 for testifying in court.
Thomas R. Terral, a general contractor accepted as an expert, testified he and some of his employees estimated the cost of replacing the educational building and auditorium of the church. This witness submitted a bill for these services in the amount of $858.20, which included travel time for himself and two or three of his employees, plus miscellaneous office expenses and $250 for testifying in court. His testimony comprises four and one-half pages of transcript. The trial judge awarded the total amount charged as expert witness fees, which we find excessive and it is therefore reduced to $300, which includes $100 for testifying.
Defendant placed in evidence the statements of charges of two other contractors, A. Ray Bond and Wesley Prestridge, which charges were $300 and $350 respectively. Neither of these prospective witnesses testified, it being stipulated that if they were called their testimony would be essentially the same as that of Thomas R. Terral. However, plaintiff objected to the introduction of the bills into evidence. The court awarded fees to these contractors in the amounts shown in their statements. Since we have no evidence of time spent in making these appraisals and neither Bond nor Prestridge testified, we find there should be no award of expert witness fees. See La.R.S. 13:3666.
Joe Simmons was accepted by the court as a "sound" expert, over objection of plaintiff who cross-examined the witness and determined that Simmons was not an engineer and had never made a "traffic noise" test before this one. The trial judge allowed the witness to testify and stated the objection would go to the weight and not to the "admissibility" of the testimony. *896 This witness testified at length as to various sound tests, made over a period of three days, and television tapes which were made to show the relative positions from which the audio tests were made; further, he gave the readings in "decibels" and testified that if the road was eventually widened to the edge of the right-of-way taken, the paved portion would be 18 feet from the front door of the church; that the present sound level at that distance would increase approximately ten decibels over the present reading; and he estimated the sound inside the church would rise to the upper level of speech sound or 80 decibels, which in his opinion would interfere with church activities. However, he could not project what proportionate increase there would be in the decibel count if the pavement were widened only 14 feet, the proposed width of the new construction, which would reduce the space between the edge of the pavement and the church from 61.9 to 47.4 feet. Simmons' testimony consumed approximately 46 pages of transcript. His bill for his services, which included furnishing sound and television equipment for the tests, was $500, $225 per day for court appearance, and $125 for replaying audio and television tapes in the court room, or a total of $850. We find this fee was excessive and reduce it to $550, representing $400 for preparation for trial and $150 for testifying.
It was stipulated between counsel that if Lauren Willett were called he would testify that he assisted Simmons in making the traffic count while the sound of traffic was being recorded. For this he submitted a bill for $225 for one day. This charge was allowed by the court. We find this award should be disallowed under La.R.S. 13:3666 and cases annotated thereunder.
For the reasons assigned the judgment of the lower court is amended to reduce the award to defendant, United Pentecostal Church of Hodge, Louisiana, and against plaintiff State of Louisiana, through Department of Highways to $25,629.14, less a credit of $3,632.00 previously paid, leaving a balance of $21,997.14, which amount is for the following items:

 Land taken $ 3,279.14
 Improvements taken 2,350.00
 Severance damage 20,000.00
 __________
 $25,629.14

The judgment is further amended to fix the expert witness fees as follows:

 Hab Monsur $ 650.00
 Darrel Willet 650.00
 H. L. Bass 250.00
 O. L. Jordan 250.00
 Richard Crawford 577.00
 Don Barron 300.00
 Thomas R. Terral 300.00
 Joe Simmons 550.00
 _________
 $3,527.00

As amended, the judgment is affirmed.